HOWELL BROTHERS V. W. A. WISE ET AL.

[FILED FEBRUARY 18, 1890.]

The Evidence examined, and *held*, to sustain the findings of the trial court.

APPEAL from the district court for Lancaster county. Heard below before FIELD, J.

*Billingsley & Woodward,* and *A. J. Sawyer,* for appellants, cited: *Ballou v. Black,* 17 Neb., 398; *Foster v. Dohle,* Id., 633.

*Selleck & Lane, contra,* cited: *Wallace v. Flierschman,* 22 Neb., 204; *Poessenecker v. Weatherby,* 16 Id., 94.

NORVAL, J.

The plaintiffs, Howell Brothers, brought an action in the district court of Lancaster county to foreclose a mechanic's lien against the real estate of the defendants, J. I. Salter and Roxa B. Salter, for materials furnished for the erection of a small one story frame dwelling for the Salters. The defendant W. A. Wise was the contractor and builder, who was to furnish all the labor and materials for the erection of the building, and to whom all the materials were sold.

The plaintiffs' lien was filed on the 16th day of December, 1886.    The defendant W. J. Turner filed a cross-petition setting up a lien for paints, brushes, glass, and other materials, which lien was filed on the 6th day of January, 1887.

The court below found in favor of said plaintiffs, Howell Bros., for the amount claimed, to-wit, $365.12, with interest at 7 per cent thereon from October 29, 1886, against W. A. Wise, and the court also found that there was due to the defendant Turner from the defendant W. A. Wise the sum of $20.15, with interest at the rate of 7 per cent per annum from October 26, 1886, and gave said plaintiffs and said defendant Turner judgment against said Wise accordingly, but found that the said plaintiffs and the said defendant Turner were not entitled to liens against the premises of the Salters.    The plaintiffs and the defendant Turner appeal from the decision denying their lien.

As to the appeal of Howell Brothers, there is only one question for our consideration, and that is, Did they file their lien within sixty days from the time the materials were furnished?    It appears from the evidence that it is usual for plaintiffs' teamsters to take a receipt from the person to whom materials are delivered, and several of these original receipts are in the bill of exceptions.    The dispute is as to four small deliveries of materials.    The plaintiffs claim they were delivered after October 16, and the defendants Salter insist that no materials were delivered after that date.    The first disputed delivery is that of October 20, of some finishing lumber.    A receipt is in the record signed by Wise bearing that date and marked on the receipt the words " Teamster, Morgan."

Edward Morgan, one of the plaintiffs' teamsters, testified to making one delivery, as follows:

Q. State if you were out at Salter's house on the place where the lumber was being delivered for his house in October, 1886.

A. Yes, sir; I took one load out there.

Q. What were you doing?

A. It was finishing lumber altogether.

Q. That is all you hauled?

A. Yes, sir.

Q. That was in October, 1886?

A. Yes, sir; I think it was.

Q. Do you know what part of the month it was in?

A. I could not tell; the tickets tell; we have tickets every load we take out.

\*          \*          \*          \*          \*          \*          \*

Cross-examination:

Q. You say you do not remember when you took that?

A. I could not tell exactly the day; we were delivering lumber all the time, one day after the other.

Q. Were you delivering for Howell Brothers anywhere else?

A. Yes, sir.

Q. Working for them right along?

A. Yes, sir.

Q. That bill of lumber that you saw there with your name attached to, you do not know whether that lumber was used in that house or not?

A. No, sir.

Redirect:

Q. Do you know how long they had been delivering there before you hauled out yours?

A. I couldn't tell exactly, maybe two weeks; mine was the finishing up. They were just finishing up the house, I was driving a one-horse rig, and I generally took out the finishing lumber for the buildings—light lumber.

The undisputed testimony is that the first delivery of the lumber was on the 25th day of September. Some finishing lumber and mouldings were delivered on October 5, and another small delivery was also made on October 8,

as appears from the teamsters' receipts. Neither of the receipts names the person who made the delivery. The Salters claim that the witness Morgan made one of them. Mr. Morgan testified his delivery was about two weeks after the first materials were furnished for the house, which would bring it about October 5 or 8.

Another teamster of plaintiff, Fred Swanson, testified that he remembers hauling two loads, but it is not claimed that he made either of the four deliveries in dispute, hence his testimony does not throw any light upon the controversy.

Mr. L. S. Kroetch, the manager of plaintiffs' business, gave testimony by deposition, from which it appears that he sold the materials to the contractor Wise; that materials covered by the disputed charges of October 22 and 29 were delivered to Mr. Wise in plaintiff's yard, but there is no evidence to show that they ever went to Salter's premises. There are no teamsters' receipts even in the record, for the materials claimed to have been furnished October 22 and 29, and there is no competent evidence even that they were delivered to Wise in plaintiff's yard, as the following cross-examination of the witness Kroetch shows :

Q. To whom was it delivered?

A. To Mr. Wise.

Q. How do you know it was delivered to Mr. Wise?

A. It was reported so by Mr. Miller.

Q. Then your opinion is based upon the report?

A. Yes, sir.

Q. You have no personal knowledge?

A. No, sir.

To establish the delivery of the four small items of date of October 26, is a teamster's receipt signed for Wise by one J. T. Dailey. There is a charge for one transom after October 16, yet no witness testified that it was ever delivered at plaintiff's premises, and the evidence is overwhelming that there is no transom in Salter's house.

The evidence on the part of the Salters is to the effect that they lived within a few feet of the house while it was being built, were around there constantly, that Wise pushed the work and had all the work completed by October 14, and no materials were delivered there after that date.

J. I. Salter testified when the last materials were furnished and house was completed as follows:

Q. Now, when was that house finished; the carpenter work in the house I am inquiring for now?

A. It was finished as far as it is finished now, on or about the 13th day of October. * * *

Q. State if at that time you examined to see whether the material was there or not.

A. On the 13th I went through the house; I made a thorough examination, as thorough as I knew how to make; the material, as far as any has been used since—the material was all there that has been used on the house since, the most of it in place; there was a part of the baseboards in the front room that were not nailed on, it was leaning up against the side of the house, but it was there.

Q. How about the doors and windows?

A. The windows, I am not positive whether they were all in; at any rate they were all there, and I think all in, and there was one door I am sure that was not hung.

Q. When did you next examine?

A. The next day, on the 14th, I went to work in what is called Peak's orchard for Mr. Heartz up here, and I don't recollect of being in the house at all. * * * On the 15th, in the morning, I went into the north door of the dining room, and through the dining room through the front room, and out at the south door. I saw that the baseboards were in place at this time; this was in the morning; then at noon when I came home, I went and looked in the bedroom; opened the doors and looked in the bedroom, and there was nothing I could see but what was complete and finished there.

Q. Then on the 15th you say everything was in place?

A. Everything I could see; there was nothing done afterwards, only oiling of the floors and staining.

Q. Has there ever been any carpenter work done by Mr. Wise or his men on your house after the 15th day of October, 1886?

A. No, sir.    *    *    *

Q. State how many transoms there are in that house.

A. There is not a transom and never was in the house or cellar, either in the foundation of the cellar or in the house.

Q. There is none there now?

A. No, sir, and never has been.

Mr. Salter is corroborated by the testimony of his wife and also by a written memorandum introduced in evidence, which she claims to have made at the time. If the testimony of the Salters is entitled to credit, no materials were delivered by the plaintiffs within sixty days prior to the date of filing their claim for a lien. It was peculiarly the province of the trial court, who had an apportunity to see the witnesses and hear their testimony, to say what witness was entitled to credit. A reviewing court will only examine the evidence sufficiently to ascertain that the trial court had sufficient facts before it upon which to base its decision. There being ample evidence in the record, if true, to uphold the decree that the plaintiffs were not entitled to a lien, the decree in that regard will not be disturbed.

There is no competent evidence that any of the materials sold by Turner were ever delivered at Salter's house. Mr. Turner testified that the first articles Wise took with him, and "that on the 8th of November he came in and said he would like to have the oil and the other goods sent out, and we sent those out by a dray." Mr. Turner further testified:

Q. Did you deliver these goods yourself?

A. Do you mean in person at the place?

Q. Of your own personal knowledge do you know where those goods went to?

A. No, sir, not after they left the store.

Q. The only knowledge you have as to the destination of the goods is what somebody told you?.

A. The drayman to whom I delivered the goods, after his return, I paid him, he said he delivered them at that place.

No other witness was called to establish Turner's claim. The Salters both testified that no goods were delivered at their place after October. If their testimony is true, Mr. Turner's goods were delivered at some other place. The evidence fully·sustains the findings of the trial court, and its decree is affirmed.

DECREE AFFIRMED.

THE other judges concur.